# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STEPHANIE L. CAMPBELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-08-448-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Stephanie L. Campbell requests judicial review of the decision of the Commissioner of the Social Security Administration denying her benefits pursuant to 42 U.S.C. § 405(g). She appeals the decision of the Commissioner's decision and contends that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the decision of the Commissioner is hereby REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater,* 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938). *See also Clifton v. Chater,* 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services,* 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488 (1951); *see also Casias,* 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on February 22, 1979, and was twenty-nine years old at the time of the administrative hearing. She has a high school education, and previously worked as a prep cook and fast food cook. The claimant alleges that she has been unable to work since October 16, 1998, primarily because of seizures and back problems.

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 on April 11, 2005. Her application was denied. ALJ John Volz held an administrative hearing and determined that the claimant was not disabled in a written opinion dated April 2, 2008. The Appeals Council denied review, so the ALJ's written opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found the claimant had the residual functional capacity ("RFC") to perform light work but should avoid all exposure to hazards such as moving machinery and heights (Tr. 17). The ALJ concluded that although the claimant could not return to any of her past relevant work, she was nevertheless not disabled because there was other work she could perform in the national economy, *e. g.* mail clerk, sorting, hand packing, arcade attendant, cafeteria cashier, food order clerk, and miscellaneous labor (Tr. 18-19).

## Review

The claimant contends that the ALJ erred in analyzing the opinion of his treating physician Dr. Sabrina Childs. The claimant argues specifically that: (i) the ALJ failed to give controlling weight to Dr. Childs' opinion; (ii) the ALJ failed to point to any evidence contradictory to Dr. Childs' opinion, and (iii) the ALJ failed to discuss what weight he did give Dr. Childs' opinion. The Court agrees and finds that the ALJ *did* fail to properly analyze Dr. Childs' medical opinion.

Medical opinions from a treating physician are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques [and] consistent with other substantial evidence in the record." *Langley v. Barnhart,* 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinions are not entitled to controlling weight, the ALJ must nevertheless determine the proper weight to give them by analyzing all of the factors set forth in 20 C.F.R. § 404.1527. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using *all of the factors* provided in § [404.1527].''), *quoting Watkins,* 350 F.3d at 1300 [emphasis added]. Those factors are: (i) length of the treatment relationship and frequency of examination; (ii) nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which

an opinion is rendered; and (vi) any other factors that tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). And if the ALJ decides to reject a treating physician's opinions entirely, he must "give specific, legitimate reasons for doing so." *Id.* at 1301. In sum, it must be "clear to any subsequent reviewers the weight the ALJ gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300.

There is some dispute here about whether Dr. Childs *actually was* the claimant's treating physician. In order for such a relationship to exist, a physician must have seen a claimant enough times over a sufficient period of time to have "a longitudinal picture" of the claimant's impairment. *See Doyal v. Barnhart*, 331 F.3d 758, 763 (10th Cir. 2003), *quoting* 20 C.F.R. § 416.927(d)(2)(i). The ALJ did not indicate whether he considered Dr. Childs to be the claimant's treating physician, but the claimant testified that she had been seeing Dr. Childs and the Cherokee Nation Muskogee Health Center for regular appointments related to her seizure disorder every three to six months (Tr. 507-548, 551, 726-27). The medical records themselves indicate that Dr. Childs (and the Cherokee Nation Muskogee Health Center) consistently treated the claimant from November 5, 2004, through March 13, 2006, primarily by assisting her in obtaining medication for seizures (Tr. 507-548). The Court finds that Dr. Childs *was* a treating physician.

Dr. Childs prepared a Residual Functional Capacity Questionnaire on the claimant dated May 12, 2006, which indicated that the claimant continued to have one or two seizures a week despite taking prescribed medication to control her condition. Dr. Childs also opined as to the claimant's functional limitations, *i. e.*, that she could stand/walk/sit

less than two hours in an eight-hour workday, and that her impairments would cause her to be absent from work more than three times a month (Tr. 554). The ALJ analyzed these opinions by Dr. Childs as follows:

> As for the opinion evidence, Dr. Sabrina Childs completed a Residual Functional Capacity Questionnaire on May 12, 2006, and indicated the claimant has 1 to 2 seizures per week, despite compliance with her medication [Citing Tr. 551-555]. The undersigned gives little weight is given [sic] to Dr. Child's opinion as it is inconsistent with the substantial medical evidence of record.

(Tr. 19). The ALJ also discussed (albeit briefly) forty-two pages of medical records that Dr. Childs submitted to the state Disability Determination Services.

The ALJ's analysis of the information provided by Dr. Childs was deficient under the above-discussed standards for evaluating the weight to give the opinions of a treating physician for a number of reasons. First, the ALJ was required to give controlling weight to any functional limitations imposed by Dr. Childs on the claimant, *e. g.*, her inability to stand/walk/sit more than two hours a day and the likelihood she would miss work more than three times a month, unless such limitations were not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or inconsistent "with other substantial evidence in the record[,]" *Langley,* 373 F.3d at 1119, *Watkins,* 350 F.3d at 1300, but the ALJ mentioned only Dr. Childs' observation that the claimant continued to have one or two seizures a week. The ALJ *did note* that he found Dr. Childs' opinion to be "inconsistent with the substantial medical evidence of record" but failed to specify the evidence. *See Langley,* 373 F.3d at 1123 ("Because the ALJ failed to explain or identify what the claimed inconsistencies were between Dr. Williams's opinion and the other

-6-

substantial evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings."), *quoting Watkins,* 350 F.3d at 1300. *See also Wise v. Barnhart,* 129 Fed. Appx. 443, 447 (10th Cir. 2005) ("The ALJ also concluded that Dr. Houston's opinion was 'inconsistent with the credible evidence of record,' but he fails to explain what those inconsistencies are.") [citation omitted]. Further, even if Dr. Childs' opinions *were not* entitled to controlling weight, the ALJ should nevertheless have evaluated them by applying the factors set out in 20 C.F.R. § 416.927. *See Langley,* 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, [t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § 404.1527."), *quoting Watkins,* 350 F.3d at 1300. This was particularly important to do here because the ALJ apparently adopted the opinions of a non-examining state agency physician whose opinions fully supported his RFC determination without explaining why he preferred his opinions over Dr. Childs'. *See, e. g., Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) ("The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Thus, the ALJ erred in rejecting the treating-physician opinion . . . in favor of the non-examining, consulting-physician opinion . . . absent a legally sufficient explanation for doing so."); *Reid v. Chater,* 71 F.3d 372, 374 (10th Cir. 1995) ("A treating physician's opinion is favored over an opinion offered by a consulting physician."), *citing Talbot v. Heckler,* 814 F.2d 1456, 1463 (10th Cir. 1987). For that matter, the ALJ failed to specify the exact

weight he was assigning to the preferred opinion. *See, e. g., Hamlin v. Barnhart,* 365 F.3d 1208, 1223 (10th Cir. 2004) ("If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it.").

Because the ALJ failed to properly evaluate the medical opinions of the claimant's treating physician Dr. Childs, the Court concludes that the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis. On remand, the ALJ should properly weigh Dr. Childs' opinions and explain the weight he assigns *vis a vis* any opinions from non-treating physicians. If the ALJ makes any adjustments to the claimant's RFC, he should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied and the decision of the Commissioner is therefore not supported by substantial evidence. The Commissioner's decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 30th day of March, 2010.

---

          **STEVEN P. SHREDER**
          **UNITED STATES MAGISTRATE JUDGE**